IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Anthony D. Williams, | ) | Case No. 1:16-cv-3043-DCC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Ms. Loretta Lynch, Attorney General; | ) | |
| Mr. Travis Bragg, C.E.O. Warden; Ian | ) | |
| Connor, National Inmate Appeal | ) | |
| Coordinator; M. Holliday, Chief | ) | |
| Dietitian; M. Furman, Associate | ) | |
| Warden; P. Kelly, Associate Warden; | ) | |
| Mr. Hicks, Institutional Captain; S.K. | ) | |
| Brosier, Admin Remedy Coordinator; | ) | |
| Mr. Rich, CMC Coordinator; T. | ) | |
| Whitehead, Unit Manager; J. Ackerman, | ) | |
| Case Manager; Mrs. Roberts, Case | ) | |
| Manager; Mrs. Bennett, Secretary; | ) | |
| Ms. Prince, Correctional Officer; J. | ) | |
| Onuoha; Mr. Padilla, Food Service | ) | |
| Administrator; John/Jane Doe, | ) | |
| Designation and Sentence | ) | |
| Computation Unit Team; Ms. Murberry; | ) | |
| United States of America; Mr. Cox; | ) | |
| Mr. Parra; Mr. Davis, Unit Manager; | ) | |
| and Mr. Rodriguez, | ) | |
| | ) | |
| Defendants, | ) | |
| _____ | ) | |

This matter is before the Court on Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF No. 113. Plaintiff filed Responses in Opposition, Defendant filed Replies, and Plaintiff filed a Sur-Reply and supplement. ECF Nos. 128, 132, 162, 165, 167, 168. In accordance with 28 U.S.C. § 636(b) and Local Civil

Rule 73.02(B)(2) (D.S.C.), this matter was referred to United States Magistrate Judge Shiva V. Hodges for pre-trial proceedings and a Report and Recommendation ("Report"). On July 24, 2018, the Magistrate Judge issued a Report recommending that the Motion for Summary Judgment be granted. ECF No. 171. Plaintiff filed objections to the Report. ECF No. 175.

## **LEGAL STANDARD**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a de novo determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* U.S.C. § 636(b). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." (citation omitted)).

## **ANALYSIS**

The Magistrate Judge provides a thorough recitation of the facts and applicable law in this case, which the Court incorporates into this Order by reference. As previously stated, the Magistrate Judge recommends that Defendants' Motion for Summary

Judgment be granted and this action be dismissed with prejudice. ECF No. 171. Plaintiff has filed lengthy objections, which the Court will address below.

### *Sovereign Immunity*

The Magistrate Judge recommends that any claims for damages against Defendants in their official capacities be dismissed because they are entitled to sovereign immunity. ECF No. 171 at 4. Plaintiff objects that sovereign immunity does not bar his claims for injunctive relief or his claims made pursuant to the Federal Tort Claims Act ("FTCA"), among other arguments, but concedes that his claims for damages against Defendants in their official capacities are indeed barred. ECF No. 175 at 5–7. The Court agrees with the Magistrate Judge's finding and overrules the objections made by Plaintiff.

### *Personal Jurisdiction*

The Magistrate Judge recommends finding that this Court lacks personal jurisdiction over Defendants Connors, Holliday, and Murberry because they do not have sufficient contacts with South Carolina. ECF No. 171 at 5–6. Plaintiff contends that this Court has jurisdiction over these Defendants based on South Carolina's long arm statute. ECF No. 175 at 7–11.

As discussed in the Report, other courts have found that mere allegations relating to a federal official's decisions outside the forum state and other supervisory activities over a facility inside the forum state are insufficient to establish personal jurisdiction. *See, e.g., Jones v. Hawk-Sawyer*, 2000 WL 34203850, at * 2 (N.D. Tex. Oct. 19, 2000); *see also Hill v. Pugh*, 75 F. App'x. 715, 719 (10th Cir. 2003) (dismissing claims against Bureau of Prisons ("BOP") Regional Director, located in Kansas, and BOP Director, located in

Washington, D.C., for lack of personal jurisdiction, holding that it was "not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and national supervisory responsibilities over facilities within a forum state [Colorado]."); *Johnson v. Rardin*, 1992 WL 9019, at *1 (10th Cir. Jan. 17, 1992) (dismissing Regional Counsel for lack of minimum contacts where involvement was occasionally advising prison staff members in forum state); *Thornton v. Quinlan*, 864 F. Supp. 90, 92 (S.D. Ill. 1994) (declining to exercise jurisdiction over BOP director whose only contacts with Illinois were in his official capacity); *Murrell v. Chandler*, 2007 WL 869568, at *4 (E.D. Tex. Mar. 21, 2007) (dismissing BOP's Administrator of National Inmate Appeals, in Washington, D.C., for lack of personal jurisdiction) (affirmed in part, reversed in part and remanded by 277 F. App'x. 341 (5th Cir. 2008), dismissal of Defendant Watts for lack of personal jurisdiction unchallenged on appeal). Here, the Court agrees with the recommendation of the Magistrate Judge and finds that this Court does not have personal jurisdiction over Defendants Connors (the National Inmate Appeals Administrator located in Washington, D.C.), Holliday (the Chief Dietician for the BOP located in Minnesota), and Murberry (the Regional Director for the Southeast Region of the BOP located in Georgia). These Defendants are dismissed from the present action and Plaintiff's objections are overruled.

***Injunctive and Equitable Relief***

The Magistrate Judge recommends finding Plaintiff's requests for equitable and injunctive relief as moot regarding the conditions at Federal Correctional Institution ("FCI") Bennetsville because Plaintiff has been transferred to another facility. ECF No. 171 at 6–

4

7. Plaintiff contends that, other than his claim for a medical special diet, the violations to his constitutional rights are ongoing and should not be found as moot. ECF No. 175 at 6. Plaintiff also states that his claims for monetary damages are not moot. *Id.* at 11–13.

Since the filing of this action, Plaintiff has been moved to another BOP facility in Massachusetts. ECF No. 136. Accordingly, his claims for equitable and injunctive relief are moot regarding the conditions at FCI Bennetsville. *See Ajaj v. Smith*, 108 F. App'x. 743, 744 (4th Cir. 2004) (finding an inmate's claims moot where he sought equitable relief from conditions at one facility and was subsequently transferred to another facility); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (holding that a transfer mooted a prisoner's claims for injunctive and declaratory relief). Plaintiff's objections are overruled.

***Group I Claims***

As explained in the Report, Plaintiff's Second Amended Complaint alleges 29 counts; for clarity, the Magistrate Judge grouped Plaintiff's allegations into five categories. ECF Nos. 67, 171. The Court will also address Plaintiff's claims as groups. Plaintiff's claims brought pursuant to the First, Fifth, and Eighth Amendments including allegations of retaliation, denial of access to courts, and unconstitutional conditions of confinement comprise the Group I Claims.

The Magistrate recommends finding summary judgment is appropriate with respect to these claims to the extent that they are brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971). [1]

---

[1] In *Bivens*, the Court held that even in the absence of statutory authorization, it would enforce a damages remedy in a narrow context to compensate persons injured by

5

ECF No. 171 at 8–14. The Magistrate Judge gave careful attention to the recent Supreme Court decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017), whereby the Supreme Court emphasized that expanding the *Bivens* remedy is disfavored, and further highlighted the "special factors" a court must perform to determine whether a *Bivens* action should be available in a new context. Plaintiff objects to the Magistrate Judge's findings that his claims constitute a new context and that he has alternative remedies available. ECF No. 175 at 14–26.

As to Plaintiff's objections concerning his Group I Claims, the Court finds that the Magistrate Judge correctly concluded that Congress and the courts have not expanded the *Bivens* remedy to include claims for retaliation, denial of access to courts, or unconstitutional conditions of confinement under the First, Fifth, and Eighth Amendments. The Magistrate Judge correctly analyzed the Supreme Court's decision in *Ziglar*, which controls the Court's consideration of Plaintiff's claims. As explained in *Ziglar*, the Supreme Court has only recognized an implied cause of action in two other cases involving other constitutional violations. *See Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment Due Process Clause provided remedy for gender discrimination); *Carlson v. Green,* 446 U.S. 14 (1980) (Eighth Amendment Cruel and Unusual Punishment Clause). Thus, three cases—*Bivens*, *Davis* and *Carlson*—represent the only instances where the Supreme Court has approved an implied damages remedy under the Constitution itself. *Ziglar.* at 1855.

---

federal officers who violated the prohibition against unreasonable search and seizures under the Fourth Amendment.

The *Ziglar* Court expressed significant caution regarding the creation of implied causes of action to enforce the Constitution. *Ziglar*, 137 S. Ct. at 1857 (internal citation omitted). Further, the Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* For instance, the Court expressly declined to create an implied damages remedy in a First Amendment suit against a federal employer in *Bush v. Lucas*, 462 U.S. 367 (1983). There, the Court indicated that it was convinced that "Congress is in a better position to decide whether or not the public interest would be served by creating it." *Bush v. Lucas*, 462 U.S. 367, 390 (1983).

*Ziglar* makes clear that a *Bivens* remedy is not available if there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Ziglar*, 137 S. Ct. at 1857 (quoting *Carlson v. Green,* 446 U.S. 14, 18 (1980) (internal quotations omitted)). With respect to the "special factors," the relevant inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857–58; *see also Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017) (remanding matter to the Court of Appeals for further proceedings in consideration of the reasoning and analysis of *Ziglar v. Abbasi* and to allow the parties to brief and argue its significance).

*Ziglar* also sets out the test this Court must apply to analyze whether Plaintiff's *Bivens* claims may proceed. First, the Court must determine whether this case is "different in a meaningful way from previous *Bivens* cases decided by [the] Court." *Ziglar*, 137 S. Ct. at 1859. If so, the context is new and the Court must then apply a "special factors analysis" before allowing a damage suit to proceed. *Id.* at 1860. *Ziglar* provides

7

a non-exhaustive list of differences that are meaningful enough to make a context new, i.e., "the constitutional right at issue; the generality or specificity of the official action; . . . or the presence of potential special factors that previous *Bivens* cases did not consider." *Id.* at 1860.

The Court will first consider whether Plaintiff's claims are meaningfully different from other cases where the Supreme Court has afforded *Bivens* remedies. As noted above, to date, the Supreme Court has only recognized a *Bivens* remedy in the context of the Fourth, Fifth, and Eighth Amendments. Upon review, the Court finds that Plaintiff's claims are unlike the Fourth Amendment unreasonable seizure claim at issue in *Bivens*, the gender discrimination claim in *Davis*,[2] or the deliberate indifference claim in *Carlson*.[3]

---

[2] The Court recognizes that Plaintiff brings a claim under the Fifth Amendment, which is the same Amendment recognized by *Davis*; however, the *Davis* Court considered a gender discrimination claim which is different in a meaningful way from any claim in this case. *See Ziglar*, 137 S. Ct. at 1849 ("[D]ifferences that are meaningful enough to make a given context a new one" may include "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider."). Accordingly, the context is new and the Court will proceed to a "special factors analysis."

[3] The Court notes that the Supreme Court has assumed in some instances that a *Bivens* remedy is available in the First Amendment claim. *See Wood v. Moss*, 134 S. Ct. 2056, 2066 (2014) (acknowledging that the Supreme Court has "several times assumed without deciding that *Bivens* extends to First Amendment claims."). However, it has not taken the affirmative step of recognizing one and has indicated that "[it] has never held that *Bivens* extends to First Amendment claims." *Reichle v. Howards,* 566 U.S. 658, 663 (2012).

Turning to the "special factors analysis," the Court must consider whether "the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Ziglar*, 137 S. Ct. at 1857–58. The "decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide" and the "projected costs and consequences to the Government itself" when the legal system is used to "bring about the proper formulation and implementation of public policies." *Id.* at 1858. To that end, "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* The Court has clearly expressed its "general reluctance to extend judicially created private rights of action." *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1389 (2018).

In his objections, Plaintiff argues that he has no alternative remedy for a violation of his constitutional rights; however, as discussed by the Magistrate Judge, Plaintiff's alternative remedies include the BOP administrative grievance process and the FTCA. Moreover, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." *See Ziglar*, 137 S. Ct. at 1865. Congress's action in this area in light of the Prison Litigation Reform Act and otherwise not only demonstrates the existence of alternative remedies, but also causes pause for the judicial creation of additional damage remedies. *Id.* "In sum, if there are sound reasons to think that Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating

the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III." *Id.* at 1858.

Having conducted the "special factors analysis," the Court concludes that Plaintiff does have other avenues for relief, and there are significant economic and governmental concerns with recognizing implied causes of action in this instance. For these reasons and for the reasons set forth in the Report, the Court overrules Plaintiff's objections and declines to find implied *Bivens* causes of action for Plaintiff's claims for retaliation, denial of access to courts, or unconstitutional conditions of confinement[4] under the First, Fifth, and Eighth Amendments.

*Excessive Force*

In his objections, Plaintiff asserts that the Magistrate Judge erred in failing to consider his claim for excessive force under the Eighth Amendment. ECF No. 175 at 4. The Court agrees that, liberally construing Plaintiff's Second Amended Complaint, he has alleged a claim for excessive force and that the Report does not address this claim.[5]

---

[4] Plaintiff spends some time in his objections arguing that the Magistrate Judge did not address all of his claims, including his claim that the showers at FCI Bennetsville exposed him and other inmates to sewage water. ECF No. 175 at 35–37. The Court finds that this allegation states a conditions of confinement claim, which is addressed above.

[5] It appears that the Magistrate Judge construes Ground 8 as only bringing a retaliation claim. *See* ECF No. 171 at 3 (explaining that Group I Claims, which includes Ground 8, are brought under the First, Fifth, and Eighth Amendments, and include allegations of retaliation, denial of access to courts, and unconstitutional conditions of confinement). Upon review, the Court finds Plaintiff also brings a claim for excessive force.

Plaintiff alleges that on September 17, 2015, he was given a pat search. ECF No. 67-1 at 95. He contends that when he objected to the way Defendant Bennett was performing the search, she "karate-chop[ped]" his testicles, causing pain and suffering. *Id.* He states that he was unable to sleep due to the resulting pain. *Id.* at 96.

As the Supreme Court recognized in *Ziglar*, the Court has approved of an implied damages remedy for claims arising under the Eighth Amendment. 137 S. Ct. at 1848 (citing *Carlson*, 446 U.S. 14). In order to recover on an Eighth Amendment excessive force claim, a plaintiff must establish that the "prison official acted with a sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). Thus, courts must analyze both subjective and objective components.

"[T]he 'core judicial inquiry' regarding the subjective component of an excessive force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Parker v. Stevenson*, 625 F. App'x. 196, 198 (4th Cir. 2015) (quoting *Iko*, 535 F.3d at 239). The Fourth Circuit has identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response.

*Parker*, 625 F. App'x. at 198 (quoting *Iko*, 535 F.3d at 239); *see also Whitley Albers*, 475 U.S. 312, 321 (1986) (identifying the four factors as (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates[ ] as reasonably perceived by the responsible officials on the basis of the facts known to them").

To establish the objective component, a plaintiff must show "that the alleged wrongdoing is objectively 'harmful enough' to establish a constitutional violation" in the context of "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 303 (1991)). When prison officials maliciously and sadistically use force to cause harm, there always exists a constitutional violation regardless of how significant a plaintiff's injury may be. *Id.* at 9; *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

Based on the evidence before the Court at this procedural posture, the Court finds that there exists a genuine issue of material fact with respect to whether Plaintiff was subjected to excessive force in violation of the Eighth Amendment. Plaintiff asserts that Defendant Bennett maliciously and sadistically used force to cause him pain; Defendant Bennett states that she followed BOP procedures and denies that she struck his testicles. ECF Nos. 67-1 at 95; 113-14. Plaintiff's medical records show that he reported to sick call on September 21, 2015, complaining of testicular soreness for the previous five days as a result of a pat search. ECF No. 113-16 at 31–33. Accordingly, Defendants' Motion for Summary Judgment is denied with respect to Plaintiff's claim for excessive force

against Defendant Bennett. *See Tedder v. Johnson*, 527 F. App'x. 269, 274 (4th Cir. 2013) ("[The] malicious and sadistic use of force for the very purpose of causing pain is always in violation of clearly established law."); *Brown v. Jones*, 471 F. App'x. 420, 421 (5th Cir. 2012) (finding plaintiff stated a claim for violation of his Eighth Amendment rights where "[plaintiff] alleged, in a verified complaint, that during a pat down search [the defendant] struck [the plaintiff] in the groin and squeezed his testicles in an unnecessary and sadistic attack for the purpose of causing him pain."); *Clark v. Compton*, 2008 WL 2356739, * 3–4 (N.D. Ind. June 4, 2008) (finding plaintiff stated an excessive force claim where he testified that after submitting to handcuffs, the defendant, "while smiling, drove his right knee directly into [plaintiff's] groin").[6]

***Medical Indifference Claim***

Plaintiff alleges that Defendants Padilla, Dr. Onuoha, Furman, and Kelly[7] were deliberately indifferent to his serious medical needs. ECF No. 67-1 at 55–57. The Magistrate Judge found that Plaintiff failed to present sufficient evidence to support his claims. ECF No. 171 at 14–18. Plaintiff contends that Dr. Onuoha, the only medical defendant, ignored his prescribed medical treatment and continued to order food for him

---

[6] The Court notes Defendants' argument that "a prison's internal security is 'peculiarly a matter normally left to the discretion of prison administrators' and they should be given 'wide-ranging deference' regarding the actions necessary 'to preserve internal order and discipline and to maintain institutional security,'" ECF No. 113 (citation omitted); however, at this procedural posture, the Court cannot determine that the amount of force allegedly used against Plaintiff was necessary to maintain institutional security.

[7] Plaintiff includes Defendant Holliday in these allegations; however, Defendant Holliday has already been dismissed from this action, supra.

that exacerbated his medical issues. ECF No. 175 at 26–30. He further argues that Padilla, Furman, and Kelly ("the non-medical Defendants") were deliberately indifferent to his serious medical needs by failing to provide him with the correct meals.[8] *Id.* at 30–32.

Plaintiff's objections mainly focus on the fact that Plaintiff's recurring abdominal pain was triggered by a diet that included milk and peanut butter. ECF No. 171 at 26–32. He contends that Dr. Onuoha was aware of this but continued to order the same food for him and that the non-medical Defendants knew that he was being ordered food that caused him pain but did nothing to stop it. *Id.*

The Magistrate Judge provides a detailed recitation of Plaintiff's relevant medical treatment, which the Court will briefly summarize. In 2012, Plaintiff saw a gastroenterologist who recommended that Plaintiff remain on a normal diet but eat smaller portions more frequently; this recommendation was reinforced by Dr. Onuoha. ECF No. 113-16 at 53–58, 322–23. On November 9, 2015, Dr. Onuoha ordered that Plaintiff receive six small meals per day or three regular meals and three snacks. *Id.* at 26. Plaintiff complained that the peanut butter was causing him discomfort; Dr. Onuoha spoke to Defendant Padilla, the Assistant Food Service Administrator, about available snack options and Defendant Padilla told him that Plaintiff had switched "to a common

---

[8] Plaintiff also argues that these claims are not barred by *Ziglar*. ECF No. 175 at 32–35. The Magistrate Judge noted that Plaintiff's claims for deliberate indifference to serious needs *may* be barred by *Ziglar*; however, the Magistrate Judge made no finding that it was barred and proceeded to a substantive analysis of these claims. ECF No. 171 at 14. Accordingly, Plaintiff's objections are overruled.

14

fare diet on his own accord and that [Plaintiff's] dietary requests [Dr. Onuoha had listed were] totally different from what [Plaintiff] had agreed to yesterday as per having tolerated them well in the past." *Id.* at 11–12. On March 25, 2016, Plaintiff complained about pain and reported that he had been drinking milk despite the fact that he was aware that he is possibly lactose intolerant. *Id.* at 196.

Plaintiff's allegations are insufficient to preclude a finding of summary judgment with respect to his deliberate indifference to serious medical needs claim against Dr. Onuoha. Plaintiff asserts that he should have been placed on a special diet. However, the evidence before the Court establishes, and Plaintiff does not dispute, he received adequate food to eat smaller, more frequent meals as recommended by the gastroenterologist. Further, Dr. Onuoha recommended to Plaintiff that he avoid the foods that were known to cause him pain and spoke to other prison officials regarding the availability of food that did not exacerbate Plaintiff's medical issues. *See Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir. 1990) (to prevail on a deliberate indifference to serious medical needs claim, a plaintiff must demonstrate that he received treatment "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness"); *Jackson v. Fair,* 846 F.2d 811, 817 (1st Cir. 1988) (in the context of prisoner medical care, the Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment).

Turning to the non-medical Defendants, Plaintiff has provided no evidence beyond his own conclusory allegations that these Defendants denied him medical care, deliberately interfered with a doctor's treatment, or were indifferent to a doctor's

15

misconduct. *See Vinson v. U.S. Marshals Serv.,* No. 0:10-cv-79-RMG-PJG, 2011 WL 3903057, at *8 (D.S.C. July 29, 2011) ("[T]o establish a claim for denial of medical care against non-medical personnel, a prisoner must show that they failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct." (citing *Miltier,* 896 F.2d at 854)); *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989) (holding that conclusory allegations, without more, are insufficient to preclude granting the summary judgment motion).

### *Group II Claims*

Plaintiff's Group II claims consist of his allegations that Defendants violated 42 U.S.C. §§ 1985, 1986. ECF No. 67-1 at 71–72. The Magistrate Judge recommends granting summary judgment with respect to these claims because the *Ziglar* Court determined that federal officials are entitled to qualified immunity for alleged violations of § 1985(3), which imposes liability on two or more persons who conspire to deprive a person or group of persons of the equal protection of he laws. ECF No. 171 at 18. The Magistrate Judge reasons that, by implication, Defendants are entitled to qualified immunity for an alleged violation of § 1986 because it provides a cause of action for neglecting to prevent violations of § 1985. *Id.* Plaintiff generally objects to the Magistrate Judge's recommendation. ECF No. 175 at 37–38. Upon review of the record and

applicable law, the Court agrees that Defendants are entitled to qualified immunity with respect to these claims and that summary judgment is appropriate.[9]

## *FTCA Negligence Claim*

Plaintiff's claims under the FTCA for negligence alleges that "Defendants owed a duty to Plaintiff to protect him against their colleagues, other inmate and against the harms of their wrongdoing." ECF No. 67-1 at 70. The Magistrate Judge found that, to the extent Plaintiff asserts claims based on Defendants' failure to properly supervise each other, this Court lacks subject matter jurisdiction over such claims because supervisory authority falls under the discretionary function exception to the FTCA. ECF No. 171 at 18–21. The Magistrate Judge further determined that, to the extent Plaintiff alleges any other claim for negligence under the FTCA, he fails to state a claim. *Id.* at 21–22. Plaintiff objects that the Magistrate Judge's interpretation of the discretionary function exception is overbroad. ECF No. 175 at 38–39. He seems to allege that there is insufficient evidence in the record to determine whether Defendants acted pursuant to BOP policy or exercised their own judgment. *Id.*

Upon review of the record, the applicable law, and the Report, the Court agrees that Plaintiff's claims regarding negligent supervision are barred by the discretionary function exception to the FTCA. Further, with respect to any other claim Plaintiff attempts to bring under the FTCA, Plaintiff fails to set forth any evidence in support of his claims

---

[9] The Court notes that Plaintiff asserts he brings his claim pursuant to 42 U.S.C. § 1985(2) and (3). The Court finds that the same analysis is applicable to § 1985(2) and that Defendants are entitled to qualified immunity.

beyond his own conclusory allegations.  *See Ross*, 759 at 365 (holding that conclusory allegations, without more, are insufficient to preclude granting the summary judgment motion).  Plaintiff's objections are overruled and summary judgment is granted with respect to Plaintiff's FTCA negligence claims.

*FTCA Medical Claim*

The Magistrate Judge recommends finding summary judgment is appropriate with respect to this claim because Plaintiff fails to provide an affidavit of an expert witness specifying at least one negligent act or omission and the factual basis for each claim. ECF No. 171 at 22–23; *see also* 28 U.S.C. § 1346(b)(1) (whether a government employee was negligent is to be determined "in accordance with the law of the place where the act or omission occurred"); *Millmine v. Harris*, C/A No. 3:10-1595-CMC, 2011 WL 317643 (D.S.C. Jan. 31, 2011) (holding that pre-suit notice and expert affidavit requirements in S.C. Code Ann. §§ 15-36-100, 15-79-125 are the substantive law in South Carolina). Plaintiff does not object to this recommendation.  Accordingly, the Court has reviewed the Magistrate Judge's recommendation for clear error and adopts her conclusion that summary judgment is appropriate with respect to this claim.

## **CONCLUSION**

Therefore, based on the foregoing, the Court adopts in part and declines to adopt in part the recommendations of the Magistrate Judge.  Defendants' Motion to Dismiss or, in the alternative, for Summary Judgement [113] is **GRANTED in part** as set forth above and **DENIED in part** with respect to Plaintiff's excessive force claim against Defendant Bennett.

IT IS SO ORDERED.

                                        s/ Donald C. Coggins, Jr.
                                        United States District Judge

August 30, 2018
Spartanburg, South Carolina